**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CASEY G. PRASHAW and LINDSEY R.**
**PRAWSHAW,**

                                        **Plaintiffs,**

        **vs.**                                                    **8:20-CV-778**
                                                                   **(MAD/CFH)**

**TITAN MINING CORPORATION; EMPIRE**
**STATE MINES, LLC; G.L. TILEY & ASSOCIATES**
**LTD; and ABC ENTITIES 1-5,**

                                        **Defendants.**
_____

**TITAN MINING CORPORATION and EMPIRE**
**STATE MINES LLC,**

                                **Third-Party Plaintiffs,**

        **vs.**

**DUMAS CONTRACTING USA INC. and CSA**
**GROUP,**

                                **Third-Party Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**PORTER, NORDBY LAW FIRM**               **ERIC C. NORDBY, ESQ.**
125 East Jefferson Street, 11th Floor      **MICHAEL SCOTT PORTER, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiffs

**GOLDBERG, SEGALLA LAW FIRM –**          **CHRISTINA VERONE JULIANO, ESQ.**
**SYRACUSE OFFICE**
5786 Widewaters Parkway
Syracuse, New York 13214
Attorneys for Defendant/Third-Party
Plaintiff Titan Mining Corporation

**FARRELL, WHITE & LEGG PLLC**            **MICHAEL J. FARRELL, ESQ.**

1

914 5th Avenue                                    **JAMES B. SHEPARD, ESQ.**
Huntington, West Virginia 25701
Attorneys for Defendants/Third-Party
Plaintiffs Titan Mining Corporation and
Empire State Mines, LLC

**LEWIS BRISBOIS BISGAARD & SMITH**      **JOHN J. DOODY, ESQ.**
**LLP – NEW YORK OFFICE**
77 Water Street, Suite 2100
New York, New York 10005
Attorneys for Defendant G.L. Tiley &
Associates LTD

**BAKER HOSTETLER LAW FIRM –**           **MICHELLE N. TANNEY, ESQ.**
**NEW YORK OFFICE**
45 Rockefeller Plaza
Floor 11
New York, New York 10111
Attorneys for Third-Party Defendant CSA Group

**JAMES C. GROSSO**                       **JAMES C. GROSSO, ESQ.**
6800 Pittsford Palmyra Road
Suite 230
Fairport, New York 14564
Attorneys for Third-Party Defendant Dumas
Contracting USA Inc.

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs Casey G. Prashaw and Lindsey R. Prashaw initiated this action in the Supreme

Court of the State of New York, County of St. Lawrence, on March 6, 2020. *See* Dkt. No. 2.

Plaintiffs' claims arise from the alleged failure of a mine elevator braking system. *See id.* at ¶ 34.

On July 20, 2020, this action was removed to federal court. *See* Dkt. No. 1.

On August 13, 2021, Defendants Titan Mining Corporation and Empire State Mines filed

a third-party complaint against Third-Party Defendants Dumas Contracting USA and CSA Group.

*See* Dkt. No. 64.  Third-Party Plaintiffs Titan and Empire allege claims for common law contribution and common law indemnification against both Third-Party Defendants, and a contractual indemnification claim against Third-Party Defendant Dumas.  *See id.* at ¶¶ 9-34. Presently before the Court are Third-Party Defendants' motions to dismiss.  *See* Dkt. Nos. 74, 95. For the following reasons, Third-Party Defendants' motions to dismiss are granted.

## II. BACKGROUND

On or about July 27, 2018, Plaintiff Casey Prashaw descended into the Empire State Mine. *See* Dkt. No. 2 at ¶ 34.  The elevator braking system unexpectedly engaged, causing the elevator to abruptly stop and injure Plaintiff.  *Id.*  The United States Department of Labor, Mine Safety and Health Administration investigated the incident and determined that the Digital Brake Regulator ("DBR") Panel was not properly installed.  *Id.* at ¶ 36.  The brake system was designed and manufactured by Defendant G.L. Tiley.  Dkt. No. 64 at ¶ 5.

The mine was owned by Defendant and Third-Party Plaintiff Titan and operated by Titan's subsidiary, Defendant and Third-Party Plaintiff Empire State Mines.  *Id.* at ¶¶ 27, 28.  On or about October 19, 2017, Third-Party Plaintiff Empire State Mines and Third-Party Defendant Dumas entered into an agreement entitled "Rehabilitation and Contract Mining Project."  *See* Dkt. No. 64 at ¶ 11.  The agreement "encompass[ed] a scope of work to be performed by Dumas personnel and employees at the Mine, including but not limited to, development, rehabilitation and maintenance of the Mine."  *Id.*  At the time of his injury, Plaintiff Casey Prashaw was an employee of Third-Party Defendant Dumas.  *Id.* at ¶ 10.  The contract between Third-Party Plaintiff Empire State Mines and Third-Party Defendant Dumas contains a "General Indemnities" provision.  *See* Dkt. No. 49-7 at 55-56.  The General Indemnities provision provides that Third-Party Defendant Dumas will indemnify Third-Party Plaintiff Empire State Mines for the

negligence of its own personnel, or for any injury to its own personnel "except to the extent caused or contributed to by the negligent act or omission or willful misconduct" of Empire State Mines. *Id*. at 55.

The Rehabilitation and Contract Mining Project agreement also includes an arbitration provision. It states, "[i]f there is any Dispute between the Parties concerning or arising out of or in relation to this Contract … (including any Dispute as to whether any issue or matter is arbitral) … then the Dispute shall be referred to and exclusively resolved with finality by arbitration administered by a single arbitrator under the Arbitration Act, 1991 (Ontario)." Dkt. No. 64-6 at 65. Moreover, the contract also includes a choice of law provision, stating, "[t]his Contract shall be governed by, interpreted and enforced in accordance with the Laws of the Province of Ontario and the Laws of Canada applicable therein." *Id.* at 67.

Third-Party Plaintiffs and Third-Party Defendant Dumas also signed a settlement agreement on January 14, 2019. *See* Dkt. No. 95-3. The settlement agreement lists five disputes between the parties that it resolves; none of which relate to the DBR panel malfunctioning on July 27, 2018. *See id.* at 4-5. The settlement agreement, however, contains a release clause that releases Third-Party Defendant Dumas from "all of Titan Parties' Claims now existing … which but for this Agreement, the Titan Parties may have maintained against the Dumas Parties under, in connection with or incidental to the Contract, the Equipment Leases, the Disputes, the Dumas Guarantee and the relief claimed in, and subject matter of, the Proceedings." *Id*. at 11.

Third-Party Defendant CSA Group does not have a contractual relationship with either Third-Party Plaintiff. Third-Party Defendant CSA is a Canadian company that specializes in the "testing, inspection, and certification of third-party products for conformance to applicable standards and requirements, as well as the development of industry standards." Dkt. No. 74-2 at

¶ 2.  In 2006, twelve years before the incident, Third-Party Defendant CSA evaluated and tested the DBR panel that allegedly failed.  Dkt. No. 64 at ¶ 27.  Third-Party Plaintiffs allege that "CSA should have identified the improper installation of the subject wires through its evaluation and testing" prior to the braking system's shipment to the mine.  *Id.* at ¶¶ 27-29.

In 2006, Third-Party Defendant CSA entered into an Application/Service Agreement with Defendant Tiley, the designer and manufacturer of the brake system.  *See* Dkt. No. 74-6. Following a test of the brake system, Third-Party Defendant CSA provided a sticker for the product, which stated "that the electrical product was tested and met the certification and regional installation requirements for products used in Canada."  Dkt. No. 74-2 at ¶¶ 11-12.  This sticker indicates that the brake system was "in accordance with SPE-1000, the Canada Model Code for Field Evaluation for Electrical Equipment."  *Id.* at ¶ 12.  Based on this certification, Third-Party Plaintiffs allege that Third-Party Defendant CSA is liable for the injuries of Plaintiff Prashaw based on common law contribution and common law indemnification claims.  *See* Dkt. No. 64 at ¶¶ 23-34.

### III. DISCUSSION

**A.    Legal Standard**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.* at 570.

Third-Party Defendant Dumas moves to dismiss under Rule 12(b)(6) because of the existence of an arbitration clause. The Second Circuit has held that a motion to dismiss, rather than a motion to compel arbitration, is a proper procedural vehicle in such circumstance. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) ("[B]ecause Amazon's motion to dismiss neither sought an order compelling arbitration nor indicated that Amazon would seek to force

Nicosia to arbitrate in the future, it was proper not to construe the motion to dismiss as a motion to compel arbitration, to which the summary judgment standard would apply").

Third-Party Defendant CSA moves to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure. "'A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.'" *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). On a motion to dismiss pursuant to Rule 12(b)(2), courts may consider materials outside the pleadings "without converting [the] motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). "Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quotation omitted); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). "This prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013), *cert. denied sub nom O'Neill v. Al Rajhi Bank*, 573 U.S. 954 (2014) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *accord Southern New England Tel.*, 624 F.3d at 138.

"In evaluating whether the requisite showing has been made, [courts] construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013); *see also Chloé*, 616

F.3d at 163.  "A *prima facie* showing of jurisdiction 'does not mean that plaintiff must show only some evidence of jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'"  *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (quotation omitted).  Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden.  *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (quotation omitted).  Finally, while a court is to assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, *see Ball*, 902 F.2d at 197, it should "not draw 'argumentative inferences' in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

**B.    Personal Jurisdiction**

In determining whether personal jurisdiction exists, courts employ a two-step inquiry.  First, the court must determine whether there is a "statutory basis for exercising personal jurisdiction."  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 129 (2d Cir. 2013) (citation omitted).  Second, the court must determine "whether personal jurisdiction comports with due process protections established under the Constitution."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted).

There are two types of personal jurisdiction that a court may exercise over a foreign corporation.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  First, there is general jurisdiction, which "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).  Second, there is specific jurisdiction,

which "is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.*

### 1. General Jurisdiction

New York State's long-arm statute provides for general jurisdiction over a defendant that is "engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence in the state." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citation omitted); N.Y. C.P.L.R. § 301.  "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).

In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court discussed whether due process requires further limitations on the exercise of general jurisdiction over foreign corporations.  The Court held that a foreign corporation may be subject to general jurisdiction in a state "only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state.  Aside from 'an exceptional case,' the Court explained, a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134–35 (2d Cir. 2014) (citing *Daimler*, 571 U.S. at 138-40) (internal citations omitted). Following *Daimler*, "when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'" *Brown v. Lockheed Martin Corp.*, 814

F.3d 619 (2d Cir. 2016) (citing *Daimler*, 571 U.S. at 139 n.19).  Thus, despite New York's long-arm statute, "[f]rom *Daimler*, the proposition emerged that it 'would be inconsistent with due process' to exercise general jurisdiction where a plaintiff 'has not alleged that [the defendant] is headquartered or incorporated in New York, nor has it alleged facts sufficient to show that [the defendant] is otherwise at home in New York.'"  *Minholz v. Lockheed Martin Corp.*, 227 F. Supp. 3d 249, 259 (N.D.N.Y. 2016) (quoting *Cont'l Indus. Group v. Equate Petrochemical Co.*, 586 Fed. Appx. 768, 769–70 (2d Cir. 2014)).

Here, Third-Party Defendant CSA is headquartered in Toronto, Ontario, and its United States head office is in Independence, Ohio.  Dkt. No. 64 at ¶ 4.  Third-Party Defendant CSA does not have an office in New York, or own or lease any real property in New York.  *See* Dkt. No. 74-2 at ¶ 4.  The only allegation in the third-party complaint regarding Third-Party Defendant CSA's course of doing business is that it "provides standards development and testing, inspection and certification of commercial products in the United States and globally for entrance into commercial markets."  Dkt. No. 64 at ¶ 4.  There are no allegations to support a claim that Third-Party Defendant is doing business in New York State with a "fair measure of permanence and continuity."  *Wiwa*, 226 F.3d at 95.  Third-Party Plaintiffs nonetheless claim that "there exist various grounds for general jurisdiction under C.P.L.R. § 301."

In an affidavit attached to their motion to dismiss, Third-Party Defendant CSA states that it has one employee that resides in New York, works from home, and "travels to manufacturers to inspect products … although these inspections are not specific to New York.  Rather, the employee conducts inspections across the east coast."  Dkt. No. 74-2 at ¶ 6.  Third-Party Defendant CSA also states that its revenue from New York is "minimal compared with the revenue CSA Group generates from its operations elsewhere in North America: less than one

half of one percent of CSA Group's U.S. revenue is from the State of New York." *Id.* at ¶ 7.

One employee working remotely and performing inspections throughout the east coast likely does not create general jurisdiction under N.Y. C.P.L.R. ¶ 301.  It certainly does not allow for general jurisdiction under due process principles.  Third-Party Defendant CSA has over thirty offices across the globe, none of which are in New York.  Dkt. No. 74-2 at ¶ 4.  It has one employee working remotely from New York, who travels throughout the east coast.  It simply strains credulity to argue that Third-Party Defendant CSA is nonetheless "at home" in New York. *Daimler*, 571 U.S. at 139.  "[T]he affiliations capable of supporting general jurisdiction have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Zimmerman v. Cornell Outdoor Educ.*, No. 3:20-CV-892, 2021 WL 75736, *4 (N.D.N.Y. Jan. 8, 2021) (internal quotations omitted).  Despite having thirty offices worldwide, including a United States headquarters in Ohio, Third-Party Defendant CSA does not have an office in New York. Dkt. No. 74-2 at ¶¶ 3,4.  There are no "easily ascertainable" contacts with New York that would render it "at home" in the state. *Zimmerman*, 2021 WL 75736 at *4.

### 2. Specific Jurisdiction

New York's long-arm statute allows for personal jurisdiction by acts of non-domiciliaries where the non-domiciliary, "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state ...; or (3) commits a tortious act without the state causing injury to person or property within the state ... if it (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a).  Third-

Party Plaintiffs argue that this Court has personal jurisdiction over Third-Party Defendant CSA under §§ 302(a)(1) and (3).

### a. N.Y. C.P.L.R. § 302(a)(1).

"'To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity.'" *Licci ex rel. Licci*, 732 F.3d at 168 (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). "For a cause of action to arise from the defendant's business transaction in the state, there must be 'an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Deitrick v. Gypsy Guitar Corp.*, No. 16-CV-616, 2016 WL 7494881, *5 (S.D.N.Y. Dec. 28, 2016) (quoting *Saudi v. Marine Atl., Ltd.*, 306 Fed. Appx. 653, 654 (2d Cir. 2009)).

Under Section 302(a)(1), "'jurisdiction is proper even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (2016), *reargument denied sub nom. Rushaid v. Pictet & Cie*, 28 N.Y.3d 1161 (2017) (citing *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fischbarg*, 9 N.Y.3d at 380 (citations omitted). Determining purposeful availment requires the Court to make an objective inquiry by "closely examin[ing] the defendant's contacts for their quality." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 338 (2012). A "single act" or transaction "'is sufficient to invoke jurisdiction,'" so long as the relevant New York activities "'were purposeful and there is a substantial relationship between the transaction and the claim

asserted.'" *Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 52 (2d Dep't 2016) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).

Third-Party Plaintiff relies on cases which "hold that Section 302(a)(1) provides jurisdiction over nonresident sellers who supply goods that the seller knows or should know are destined for New York[.]"  *Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 89 (S.D.N.Y. 2020); *see also Roberts-Gordon, LLC v. Pektron PLC*, 999 F. Supp. 2d 476 (W.D.N.Y. 2014); *Eugene Iovine, Inc. v. Rudox Engine and Equip. Co.*, 786 F. Supp. 236, (E.D.N.Y. 1992).  And Third-Party Plaintiffs assert, in their response memorandum of law, that Third-Party Defendant CSA "knew or should have that the [DBR] was going to be installed at a New York mine."  Dkt. No. 79 at 10.  Third-Party Plaintiffs, however, do not allege any facts that support this statement.  Indeed, the third-party complaint is wholly devoid of *any* allegations regarding Third-Party Defendant CSA's connection to New York State.

In *Fica Frio*, which Third-Party Plaintiffs rely on, the court found that the plaintiff made a *prima facie* showing that the defendant contracted with the plaintiff to supply a vehicle to "a New York resident with knowledge that ultimately it was destined for New York."  *Fica Frio*, 434 F. Supp. 3d at 89.  The plaintiff had alleged that the defendant executed a purchase order which identified the plaintiff as the buyer with a New York address.  *Id.*  Additionally, "[t]he line in the Purchase Order where the seller may list the applicable sales tax contains a handwritten note that appears to read, 'Out of State Sale.'"  *Id.*  "These allegations collectively support a reasonable inference that, at the time [defendant] contracted to sell the Vehicle, it contemplated supplying the Vehicle in New York."  *Id.*

Here, there are no allegations in the third-party complaint to support an inference that Third-Party Defendant CSA had any connection to New York or knowledge that the braking

13

system would end up there.  Instead, Third-Party Plaintiffs just assert in their response memorandum of law that Third-Party Defendant CSA "knew or should have that the [DBR] was going to be installed at a New York mine." Dkt. No. 79 at 10.  This conclusory allegation does not provide the Court with facts that show Third-Party Defendants' purposeful availment of the privilege of conducting business in New York.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (holding that "conclusory non-fact-specific jurisdictional allegations" and "legal conclusion couched as a factual allegation" do not meet the burden of a *prima facie* showing of jurisdiction); *Gazzillo v. Ply Gem Indus., Inc.*, No. 1:17CV1077, 2018 WL 5253050, *5 (N.D.N.Y. Oct. 22, 2018) (same).

Although it would be improper for the Court to weigh evidence at this stage, *see Fica Frio*, 434 F. Supp. 3d at 89, the *only* evidence currently before the Court supports an inference that Third-Party Defendant CSA did not know the braking system was bound for New York. Third-Party Defendants, a Canadian company, contracted with Defendant Tiley, a Canadian company, under Canadian law, to review and test a brake regulator in Canada, and then certify that it complied with Canadian standards.  Third-Party Defendant CSA certified the DBR with a "Special Inspection label," which indicates that the product was "evaluated to the requirements of SPE-1000, the Canada Model Code for Field Evaluation of Electrical Equipment or products used in Canada." Dkt. No. 74-2 at ¶ 12.  This Special Inspection label is specific to Canada.  *Id.* Third-Party Defendant CSA, however, also has marks and labels to certify that a piece of equipment complies with United States standards.  *See* Dkt. No. 74-3.  But rather than certify that the DBR complied with safety standards applicable to New York, Third-Party Defendant CSA only certified that it complied with Canadian safety standards.  Because Third-Party Plaintiffs do

not offer any allegations to support a *prima facie* case, the Court does not have jurisdiction over Third-Party Defendant CSA pursuant to § 301(a)(1).

### b. N.Y. C.P.L.R. § 302(a)(3)

To establish personal jurisdiction under CPLR § 302(a)(3), a plaintiff must show that (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce. *See* N.Y. C.P.L.R. § 302(a)(3); *see also Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011); *Hein v. Cuprum, S.A. de CV.*, 136 F. Supp. 2d 63, 67 (N.D.N.Y. 2001).

For the same reasons as the preceding section, Third-Party Plaintiffs failed to make a *prima facie* showing that Third-Party Defendant CSA "expected or should reasonably have expected the act to have consequences in New York." *Penguin Grp. (USA) Inc.*, 16 N.Y.3d at 302. Third-Party Plaintiffs once again rely on an assertion only made in their memorandum of law that Third-Party Defendant CSA "knew or should have known was to be provided directly to a New York company." Dkt. No. 79 at 13. But there are no allegations in the third-party complaint to support an inference that Third-Party Defendant CSA knew that the DBR was for a mine in New York. Third-Party Defendant CSA certified the DBR pursuant to "the certification and regional installation requirements for products used in Canada." Dkt. No. 74-2 at ¶ 11.

"For a *prima facie* showing of jurisdiction under Section 302(a)(3), the Plaintiff must allege anticipated in-state economic injury from an out-of-state tort." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 571 (E.D.N.Y. 2011) (citing *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197 (N.Y.1978)). Because there are no allegations in the complaint to support

an inference that Third-Party Defendant CSA knew that the DBR was intended for a New York mine, Third-Party Plaintiffs have failed to establish a *prima facie* showing of jurisdiction under Section 302(a)(3).  Accordingly, Third-Party Defendant CSA's motion to dismiss for lack of personal jurisdiction is granted.

**C.      Failure to State a Claim**

Third-Party Defendant Dumas moves to dismiss for failure to state a claim.  Third-Party Defendant Dumas argues that Third-Party Plaintiffs agreed to arbitrate their disputes, agreed to resolve all disputes by applying the laws of Ontario, Canada, and that a settlement agreement already released each other of all claims.  *See* Dkt. No. 95-10 at 10-17.

Third-Party Defendant Dumas and Third-Party Plaintiffs entered into an agreement titled "Rehabilitation and Contract Mining Project" for Third-Party Dumas to perform work at the mine. *See* Dkt. No. 64-6.  Third-Party Plaintiffs allege that Plaintiff Casey Prashaw was injured while "performing work as a Dumas employee, pursuant to the scope of work" in the contract between the parties.  Dkt. No. 64 at ¶ 12.  The contract contains a clear arbitration provision: "If there is any Dispute between the Parties concerning or arising out of or in relation to this Contract, whether before or after the expiration of this Contract (including any Dispute as to whether any issue or matter is arbitral) … then the Dispute shall be referred to and exclusively resolved with finality by arbitration administered by a single arbitrator under the Arbitration Act, 1991 (Ontario)."  Dkt. No. 64-6 at 65.

Third-Party Plaintiffs and Third-Party Defendant Dumas were also parties to a settlement agreement.  *See* Dkt. No. 95-3.  The settlement agreement lists disputes that it resolves, which does not include liability arising out of the DBR malfunction or the injuries to Plaintiffs.  *See id.* at 4-5.  The section titled "Release," however, is broad, stating that the Third-Party Plaintiffs

"release the Dumas Parties from all of the Titan Parties' claims now existing." *Id*. at 11.   Third-Party Defendant Dumas argues that this case should be dismissed because of the arbitration agreement, or, alternatively, because the parties have already released each other of their claims.

Third-Party Plaintiff argues that the Rehabilitation and Contract Mining Project agreement was superseded by the settlement agreement, which does not contain an arbitration clause. Therefore, Third-Party Plaintiff argues, this dispute should not be arbitrated.  *See* Dkt. No. 99 at 16-20.  Third-Party Plaintiffs then argue that the parties did not release each of claims arising out of the DBR malfunction because "the 2019 Settlement Agreement related only to the previously pending legal matters between the parties and did not apply to the Prashaw matter." *Id*. at 24.

The Court finds that the parties agreed to arbitrate this dispute.  Questions of arbitrability arise in two situations: "(1) when parties disagree whether an arbitration clause covers a particular dispute; and (2), when the parties disagree not about the scope of the arbitration clause but about 'whether there is even a valid agreement to arbitrate in effect at a particular time.'" *Schneider v. Kingdom of Thailand*, No. 10 Civ. 2729, 2011 WL 12871599, *4 (S.D.N.Y. Mar. 14, 2011) (quoting *Acequip Ltd. v. American Eng'g Corp.*, 315 F.3d 151, 155-56 (2d Cir. 2011)) (other citations omitted).  Generally, "the question of arbitrability … is undeniably an issue for judicial determination." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986).  As the Supreme Court has held, "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Id.* (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964)) (internal quotation marks omitted).  However, the issue of arbitrability can be decided by the arbitrator if a party can show "by clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended the question

17

of arbitrability [to] be decided by the arbitrator." *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)) (internal quotation marks omitted).

Here, Third-Party Plaintiffs argue that there is not a valid agreement to arbitrate disputes with Third-Party Defendant Dumas because the Rehabilitation and Contract Mining agreement, which contained an arbitration agreement, was superseded by the settlement agreement between the parties. At the outset, the Court notes that the arbitration agreement unambiguously states that questions of arbitrability are to be determined by the arbitrator. It states that it includes "any Dispute as to whether any issue or matter is arbitral." Dkt. No. 64-6 at 65. Accordingly, the arbitration agreement "clearly and unmistakably evidences the parties' intent to arbitrate questions of arbitrability." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 125 (2d Cir. 2003).

Alternatively, the Court rejects Third-Party Plaintiffs' argument that the settlement agreement supersedes the Rehabilitation and Contract Mining agreement's arbitration provision while the release provision does not cover the instant action. There is no indication in the settlement agreement that it was intended to supplant the dispute mechanisms of the Rehabilitation and Contract Mining agreement. Indeed, Third-Party Plaintiffs do not direct the Court to any language in the settlement agreement to support that idea and the Court finds none.

As Third-Party Plaintiffs persuasively argued when addressing whether the release provision was applicable to the instant dispute, "[b]y virtue of the plain language used in the 2019 Settlement Agreement, the detailed enumerated 'disputes' therein make clear which disputes the parties intended said agreement to encompass, specifically identifying each of the then-pending legal and arbitration actions between the parties. Notably, the listed 'disputes' exclude any mention of future indemnification or contribution claims arising from an employee of Third-Party

Defendant asserting a personal injury claim against Third-Party Plaintiffs, and also exclude any mention of any claim related to Mr. Prashaw's July 27, 2018 accident." Dkt. No. 99 at 21. After detailing the limited scopes of the "Disputes" and "Compromise" sections, and noting the "*expressio unius est exclusio alterius*" and "*ejusdem generis*" canons of interpretation, Third-Party Plaintiffs conclude as follows:

> The wording of these provisions leaves no ambiguity as to the specific disputes that the parties intended to be within the scope of the 2019 Settlement Agreement. It was clear that the parties intended the Agreement to encompass only the separate and distinct disputes that arose directly between Third-Party Plaintiffs and Third-Party Defendant as a result of disagreements identified therein as to the performance of their respective obligations under the Rehabilitation Contract, as contrasted with indemnification/contribution claims secondary to a personal injury claim brought against Third-Party Plaintiffs by an employee of Third-Party Defendant.

*Id.* at 23.

The Court agrees with Third-Party Plaintiff that there is no indication that the settlement agreement intended to release the parties from liability arising out of the July 27, 2018 incident. However, there is also no indication that the settlement agreement intended to supersede the dispute resolution mechanisms contained in the Rehabilitation and Contract Mining agreement. As Third-Party Plaintiffs argued throughout their brief, the settlement agreement only intended to resolve discrete disputes between the parties, which does not include the alleged DBR malfunction. There is no indication that the settlement agreement intended to supplant provisions of the Rehabilitation and Contract Mining agreement outside of the listed disputes and Third-Party Plaintiffs do not point to any contractual language to support that claim. Moreover, even if the settlement agreement were applicable to the instant dispute, the lack of a mention of an arbitration agreement in the settlement agreement likely would not override a previous arbitration

agreement, as Third-Party Plaintiffs suggest.  *See, e.g.*, *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005) ("Under our cases, if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must choose it: '[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute'") (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)).

"If the district court concludes that an agreement to arbitrate exists, 'it should then consider whether the dispute falls within the scope of the arbitration agreement.'"  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002)).  Here, Third-Party Plaintiffs do not argue, nor could they, that the dispute does not fall within the arbitration agreement of the Rehabilitation and Contract Mining agreement.  Plaintiff Casey Prashaw was employed by Third-Party Defendant Dumas to perform work on the project pursuant to the of the Rehabilitation and Contract Mining agreement.  *See* Dkt. No. 64 at ¶ 12.  The arbitration agreement states, "[i]f there is any Dispute between the Parties concerning or arising out of or in relation to this Contract, whether before or after the expiration of this Contract … then the Dispute shall be referred to and exclusively resolved with finality by arbitration administered by a single arbitrator under the Arbitration Act, 1991 (Ontario)."  Dkt. No. 64-6 at 65.  Accordingly, the present dispute falls within the scope of the arbitration agreement.

Lastly, Third-Party Plaintiffs briefly argue that even if the arbitration agreement were applicable, that "judicial economy is best served by adjudicating these third-party matters jointly with the underlying claims."  Dkt. No. 99 at 19.  The Second Circuit has explicitly held that

"judicial economy is not a basis for waiving a demand for arbitration." *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 891 (2d Cir. 1985)); *see also Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 160 (2d Cir. 2010).

Accordingly, Third-Party Defendant Dumas's motion to dismiss is granted.

## IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Third-Party Defendant CSA Group's motion to dismiss (Dkt. No. 74) is **GRANTED**; and the Court further

**ORDERS** that Third-Party Defendant Dumas's motion to dismiss (Dkt. No. 95) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall terminate the Third-Party Defendants from this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 24, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

21